**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RANDY LYNN RICHMOND,             )
                                 )
          Petitioner,            )      3:05-cv-273-ECR-VPC
                                 )
vs.                              )      **ORDER**
                                 )
DON HELLING, *et al.*,           )
                                 )
          Respondents.           )
_____ /

This action is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, by a Nevada state prisoner represented by counsel. The matter comes before the Court for consideration of the merits of the amended petition.

**I.   Procedural History**

On February 17, 2000, petitioner was charged with four felony counts of sexual assault in violation of NRS 200.366. (Exhibit 5).[1] Petitioner was arraigned on March 1, 2000. (Exhibit 7). On May 4, 2001, the State filed an amended information charging petitioner with lewdness with a child under the age of fourteen years, a violation of NRS 201.230. (Exhibit 34). A jury trial commenced on July 9, 2001. (Exhibits 38-39). On July 10, 2001, the jury found petitioner

---

[1] The exhibits referenced in this order are in the Court's record at Docket #22, 23, 24, and 44.

1  guilty of lewdness with a child under the age of fourteen years.  (Exhibit 45).  On August 1, 2001,
2  the court sentenced petitioner to a term of life in prison with parole eligibility beginning after ten
3  years.  (Exhibit 47, at p. 11).  The court ordered the sentence to run consecutive to that imposed in a
4  previous case.  (*Id.*, at pp. 11-12).  The court filed the judgment of conviction the same day.  (Exhibit
5  48).
6  　　　　　Petitioner filed a notice of appeal on August 28, 2001.  (Exhibit 49).  On September
7  10, 2002, the Nevada Supreme Court affirmed the conviction.  (Exhibit 57).  Remittitur issued on
8  October 8, 2002.  (Exhibit 59).
9  　　　　　On October 3, 2003, with the assistance of counsel, petitioner filed a post-conviction
10 habeas petition in state district court.  (Exhibit 60).  An evidentiary hearing was held on July 9, 2004.
11 (Exhibit 62).  The state district court denied the habeas petition, entering written findings of fact,
12 conclusions of law, and judgment on July 28, 2004.  (Exhibits 63 and 64).
13 　　　　　Petitioner filed a notice of appeal on August 25, 2004.  (Exhibit 65).  On April 20,
14 2005, the Nevada Supreme Court affirmed the denial of the post-conviction habeas petition.
15 (Exhibit 73).  Remittitur issued on May 17, 2005.  (Exhibit 75).
16 　　　　　On May 6, 2005, this Court received petitioner's application to proceed *in forma*
17 *pauperis* and his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Docket #1).
18 The original petition was filed on May 6, 2005.  (Docket #1).[2]

---

[2] As established in this Court's order of April 16, 2009: Pursuant to the "mailbox rule," the Court deems the filing date of a document as the date that it was given to prison officials for mailing. *Houston v. Lack*, 487 U.S. 266, 270 (1988).  At page 1 of the petition, the form states: "Date you are mailing (or handing to correctional officer) this petition to this court:____/____/____."  These blanks were not filled in with a date.  (Petition, Docket #6, at p. 1, Item #5).  The date on the last page of the petition, below petitioner's signature, is illegible.  (Petition, Docket #6, at p. 15).  As petitioner failed to indicate the date on which he mailed or handed the petition to correctional officers, the Court deems the filing date of the original petition to be May 6, 2005, the date that this Court received the petition.  (Docket #1).

On August 30, 2005, the Court granted petitioner's motion for the appointment of counsel, and ordered the Federal Public Defender to undertake representation or indicate its inability to do so within thirty days. (Docket #15). On October 7, 2005, attorney Debra Bookout, of the Office of the Federal Public Defender, entered a notice of appearance. (Docket #16).

There was no activity in this action until May 22, 2008, when the Court ordered the Office of the Federal Public Defender to file an amended petition within ninety days of entry of the order. (Docket #20). Ms. Bookout, of the Office of the Federal Public Defender, then filed an amended petition on August 19, 2008. (Docket #21). Petitioner filed exhibits to the amended petition. (Docket #22, #23, and #24). In addition, petitioner, through counsel, filed a notice of manual filing, which consists of two compact disks (CDs), as Exhibits 41 and 42. (Docket #25).[3] Respondents filed a motion to dismiss the amended petition (Docket #34). Petitioner, through counsel, filed a response to the motion. (Docket #40). Respondents filed a reply. (Docket #41).

By order filed April 16, 2009, this Court granted in part and denied in part respondents' motion to dismiss. (Docket #42). The Court ruled that Grounds 1, 2, and 3(g) of the amended petition did not relate back to the original petition, and were thus dismissed as untimely. (*Id.*). The Court further found that Grounds 1, 3(b), and 3(g) were unexhausted and dismissed. (*Id.*). The Court directed that this action proceed on Grounds 3(a), 3(c), 3(d), and 3(e) of the amended petition. (*Id.*). A briefing schedule was set for the answer and reply. (*Id.*). Respondents filed an answer to the remaining grounds on May 18, 2009. (Docket #43). Petitioner, through counsel, filed a reply on July 14, 2009. (Docket #47).

---

[3] Exhibit 41 is a redacted videotape interview with defendant in case CR00-0290 and Exhibit 42 is a redacted videotape interview with the victim in case CR00-0290. (Docket #25). Respondents filed a written objection to the CDs, in particular, arguing that there is no proof that the CDs were obtained from the state district court clerk. As indicated in this Court's order of April 16, 2009, petitioner has demonstrated, to the satisfaction of this Court, that the CDs depicting the redacted videotape of the interview with defendant (Exhibit 41) and with the victim (Exhibit 42) are true and accurate copies of the exhibits introduced at petitioner's trial.

**II.     Federal Habeas Corpus Standards**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more

than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001). Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. Discussion

### A. Ineffective Assistance of Counsel Standard

The remaining grounds of the amended petition allege ineffective assistance of counsel. Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's

burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an 'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (quotations omitted).  If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of the *Strickland* standard.  *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003).  There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id.*

**B.  Ground 3(a)**

In Ground 3(a) of the amended petition, petitioner alleges ineffective assistance of counsel due to trial counsel's failure to request a psychological evaluation of the victim, Ashley A. (Amended Petition, Docket #21, at pp. 9-10).

There is no federal constitutional right to have a child victim of sexual assault undergo a psychiatric examination.  *Gibpin v. McCormick*, 921 F.2d 928, 931-32 (9th Cir. 1990) (state's refusal to compel child assault victim to undergo psychiatric exam did not violate due process).  In order to require a victim to undergo a psychological examination in Nevada, a defendant must establish a compelling need.  *Koerschner v. State*, 116 Nev. 1111, 1116-17 (2000), *holding modified by State v. District Court*, 120 Nev. 613 (2004).  Whether there is a compelling need is based on several factors, "not necessarily given equal weight," including "whether the State actually calls or obtains some benefit from an expert in psychology or psychiatry, whether the evidence of the offenses is supported by little or no corroboration beyond the testimony of the victim, and whether there is a reasonable basis for believing that the victim's mental or emotional state may have affected his or her veracity."  *Id.* at 1117.

In the instant case, the state district court found that the State did not use an expert psychological witness in this case. (Exhibit 63, at p. 4). Corroborating evidence of the victim's testimony was presented at trial. (Exhibit 36, at pp. 209-217; *see* Exhibit 41). During the videotaped interview, petitioner admitted that he "allowed it to go too far." (Exhibit 41). He admitted to touching the outside of the victim's pants and poking her. He admitted he felt guilty about what he did and was sick with himself. (*Id.*). The victim's testimony was not uncorroborated.

Petitioner fails to establish a factual basis for his allegation that the victim had a "penchant for making up stories." (Docket #21, at p. 10). Regarding the victim's alleged history of accusing other men to of the same conduct, those other men pleaded guilty and were convicted for sexually molesting the victim. (Exhibit 73; Exhibit 63, at p. 3). One man that the victim accused, Calsbeak, pleaded guilty to lewdness against the victim and was convicted after the conclusion of petitioner's trial. (Exhibit 62, at p. 45). Petitioner's counsel testified at the state post-conviction hearing that, prior to petitioner's trial, he could not establish that the victim was making a false allegation against Calsbeak. (*Id.*). Following the evidentiary hearing, the state district court found that it would have been impossible to admit evidence of Calsbeak's conviction at petitioner's trial because Calsbeak was not convicted until after petitioner's trial. (Exhibit 63, at p. 3). The state district court also found that Calsbeak's testimony would have been inadmissible character evidence at petitioner's trial. (*Id.*). At the post-conviction evidentiary hearing, petitioner's trial counsel testified that he considered bringing a motion for a psychological evaluation, but decided against it, believing it would not be granted. (Exhibit 62, at pp. 45-46). Under Nevada law, even if a psychological evaluation is conducted by an expert, that expert is prohibited from testifying as to the truthfulness of the victim. *State v. District Court (Romano)*, 120 Nev. 613, 622 (2204), *overruled on other grounds by Abbott v. State*, 122 Nev. 715 (2006). Petitioner fails to allege how a psychological evaluation of the victim would have strengthened his defense, and fails to allege, even if a psychological evaluation were conducted, how the expert's testimony could have challenged the

truthfulness of the victim, or that it would have been admissible at trial. Petitioner has not established that his counsel's decision to not request a psychological evaluation of the victim was objectively unreasonable or that he was prejudiced.

In denying petitioner's ineffective assistance of counsel claim on this issue, the Nevada Supreme Court cited to and applied *Strickland v. Washington*, and ruled as follows:

> Fourth, Richmond contends that his counsel was ineffective for failing to request a psychological examination of A.A. He argues that a psychological evaluation was necessary to challenge A.A.'s veracity in light of her accusations of sexual misconduct against three different men and her inconsistent statements to police officers and other individuals. Even assuming counsel should have requested a psychological examination of A.A., Richmond must demonstrate that counsel's omission prejudiced him. A defendant must establish a compelling need to require a victim to under[go] a psychological examination. (Footnote 6: See Koerschner v. State, 116 Nev. 1111, 1116-17, 13 P.3d 451, 455 (2000), holding modified by State v. District Ct., 120 Nev.___, 97 P.3d 594 (2004).) Here, the record indicates that the two other men alleged to have sexually molested A.A. ultimately pleaded guilty to the allegations. Further, counsel vigorously cross-examined A.A. about the inconsistencies in her statements to others. Additionally, the State did not call or apparently obtain any benefit from an expert in psychology or psychiatry. (Footnote 7: See id.). Richmond has not adequately explained what additional evidence a psychological examination of A.A. would have revealed that would have assisted his defense. Richmond also argues that his counsel was ineffective for failing to request that A.A. undergo a physical examination. However, he fails to provide any factual or legal support for his claim. Accordingly, we conclude that Richmond has not demonstrated that his counsel was ineffective for not requesting psychological and physical examinations of A.A.

(Exhibit 73, at pp. 4-5). The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court will deny habeas relief as to Ground 3(a).

8

### C. Ground 3(c)

In Ground 3(c) of the amended petition, petitioner alleges ineffective assistance of counsel due to trial counsel's failure to effectively challenge the veracity of the victim's testimony. (Amended Petition, Docket #21, at pp. 10-11). Petitioner alleges that counsel failed to vigorously cross-examine the witness about other alleged sexual assault cases, and about the physical appearance of petitioner's body, including his amputated leg, the discoloration of his skin, and his ability to sustain an erection. (*Id.*).

On cross-examination, petitioner's counsel elicited testimony directly challenging the victim's credibility and the truthfulness of her allegations against petitioner. Counsel repeatedly posed questions to which the victim responded that she could not remember. (Exhibit 38, at pp. 123-135). Petitioner's counsel attempted to impeach the victim with her own testimony from the preliminary hearing. (*Id.*, at pp. 131-33). Petitioner fails to identify what new, favorable evidence would have been elicited from the victim that would have led the jury to acquit him. Even if petitioner's counsel had questioned the victim about his body, the appearance of his skin, or his ability to sustain an erection, petitioner fails to explain how this testimony would have resulted in a different verdict by the jury. Petitioner has not established that his counsel's questioning was objectively unreasonable or that he was prejudiced.

In denying petitioner's ineffective assistance of counsel claim on this issue, the Nevada Supreme Court ruled as follows:

> Third, Richmond argues that his counsel was ineffective for failing to vigorously cross-examine A.A. and that with a more effective cross-examination, the jury would have disbelieved her "limited, forgetful trial testimony." Richmond complains that his counsel failed to cross-examine A.A. regarding her previous allegations that two men, including her father, had molested her. However, A.A.'s mother testified at trial that A.A.'s father was in prison after having pleaded guilty to sexually molesting A.A. (when she was one or two years old) and her sister.
>
> Further, at the post-conviction evidentiary hearing, counsel testified that at the time of Richmond's trial, a man named Calsbeak was

9

>awaiting trial on charges of sexually molesting A.A. Consequently, Calsbeak was unavailable to testify at Richmond's trial regarding the allegations. Counsel further testified that he learned after Richmond's trial that Calsbeak had pleaded guilty. Nothing in the record describes the nature of Calsbeak's crimes, when they occurred, or A.A.'s age at the time Calsbeak committed his offenses. Based on the record we conclude that Richmond fails to demonstrate prejudice even assuming his counsel should have cross-examined A.A. as Richmond suggests.
>
>Richmond also contends that his legs were discolored and mottled from diabetes and that counsel should have questioned A.A. about the appearance of his legs to dispel her claim that she saw Richmond naked. The record reveals that A.A. told a policewoman that she saw Richmond naked once when she came to his front door. Richmond suggests that if A.A. had indeed observed him naked she most assuredly would have noted the condition of his legs. However, counsel vigorously cross-examined A.A. about her inconsistent statements to police officers and others concerning the nature and extent of Richmond's sexual contact with her. Based on the record, we conclude that Richmond fails to demonstrate prejudice even assuming counsel should have questioned A.A. as he suggests.

(Exhibit 73, at pp. 3-4). The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court will deny habeas relief as to Ground 3(c).

**D. Ground 3(d)**

Petitioner alleges ineffective assistance of counsel due to trial counsel's failure to object to jury instruction #15. (Amended Petition, Docket #21, at p. 11). Jury instruction 15 stated:

>Discrepancies in the witness's testimony or between a witness's testimony and that of other witnesses, if there were any, do not necessarily mean that any witness should be discredited. Failure of recollection is common. Innocent misrecollection is not uncommon. Two persons witnessing an incident or transaction often will see or hear it differently. Whether a discrepancy pertains to an important matter or only to something trivial should be considered by you.

(Exhibit 43, at 15).

On direct appeal, petitioner claimed that the district court erred in giving jury instruction 15 because it was superfluous and confusing. (Exhibit 53, at p. 11). The Nevada Supreme Court considered jury instruction 15 in its order of affirmance on petitioner's direct appeal, as follows:

> Richmond argues that Jury Instruction Fifteen, which stated that discrepancies in a witness's testimony do not necessarily mean that the jury should discredit that witness, was superfluous and confusing. Because Richmond did not object to this instruction, a plain error analysis applies. (Footnote 1: Garner v. State, 116 Nev. 770, 783, 6 P.3d 1013, 1022 (2000), cert. denied, 523 U.S. 929 (2001). Plain error is an error that is "so unmistakable that it is apparent from a casual inspection of the record" (Footnote 2: Id.), and which affects the defendant's substantial rights. (Footnote 3, Leonard v. State, 117 Nev. 53, 63, 17 P.3d 397, 403-04 (2001).
>
> A district court has broad discretion to settle jury instructions. (Footnote 4: Jackson v. State, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001). Richmond argues that Jury Instructions Fourteen and Twenty-five, which respectively instructed the jury that it should determine witness credibility, and that it should use common sense in drawing inferences based on the evidence, substantially covered Jury Instruction Fifteen. Yet, while a district court may refuse to give an instruction substantially covered by other instructions (Footnote 5: See Runion v. State, 116 Nev. 1041, 1050, 13 P.3d 52, 58 (2000), it is not necessarily an abuse of discretion to give a redundant instruction.
>
> Additionally, any error did not affect Richmond's substantial rights. Although Richmond argues that the instructions confused the jury by excusing inconsistencies in A.A.'s testimony, the instruction merely stated that discrepancies "do not necessarily mean that any witness should be discredited." The instruction also told the jury to consider where a discrepancy "pertains to a matter or only to something trivial." This instruction left open to the jury the option of rejecting A.A.'s testimony based on its inconsistencies. The district court did not commit plain error in giving this instruction.

(Exhibit 57, at pp. 2-3).

On appeal from the denial of petitioner's state habeas petition, the Nevada Supreme Court considered petitioner's ineffective assistance of counsel claim regarding counsel's failure to object to jury instruction 15, ruling as follows:

> Finally, Richmond contends that his counsel was ineffective for failing to object to instructions 15 and 26. Richmond asserts that instruction 15 contributed to an unfair verdict because it advised the jury that discrepancies in testimony "did not necessarily mean that the witness

11

> should be discredited." He further argues that instruction 15 allowed the jury to disregard A.A.'s numerous accusations of sexual intercourse as "something trivial" and thereby convict Richmond. However, Richmond provides no authority supporting his claim that this instruction is legally infirm.
>
> * * *
>
> Even assuming counsel was deficient by not objecting to instructions 15 and 6, we conclude that Richmond fails to demonstrate prejudice.

(Exhibit 73, at pp. 6-7). The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court will deny habeas relief as to Ground 3(d).

### E. Ground 3(e)

Petitioner alleges ineffective assistance of counsel due to trial counsel's failure to fully investigate and present evidence of petitioner's erectile dysfunction. (Amended Petition, Docket #21, at pp. 11-12). In the amended information, the State alleged that petitioner committed a lewd and lascivious act on the victim, in that he "placed his hand upon the vagina of the said Ashley Renee A., over her clothing and that said defendant pushed and/or poked his finger and/or fingers and /or her clothing into the vagina of the said Ashley Renee A., . . . ." (Exhibit 34, at 2). Petitioner was not on trial for sexual assault, and the lewdness statute does not require that a defendant use his penis to commit the offense. NRS 201.230(1). Petitioner was not charged with having perpetrated any offense against the victim using his penis, whether erect, flaccid, or otherwise. (*See* Exhibit 34). As such, whether petitioner was afflicted with erectile dysfunction is irrelevant to whether the jury could conclude that petitioner used his fingers to touch the victim's vagina. It was not objectively unreasonable for petitioner's counsel to fail to establish whether or not petitioner had erectile

dysfunction. Petitioner suffered no prejudice, because he was not charged with an offense to which erectile dysfunction would be a defense.

In denying petitioner's ineffective assistance of counsel claim on this issue, the Nevada Supreme Court ruled as follows:

> First, Richmond asserts that his counsel was ineffective for failing to introduce evidence of Richmond's erectile dysfunction. He claims that evidence of his erectile dysfunction would have established that the victim, A.A., had fabricated her allegation against him because he was unable to achieve an erection. Specifically, Richmond argues that his counsel should have conducted a more thorough direct examination of his physician. He further claims that counsel should have reviewed the medical records of his orthopedic doctor for evidence of his erectile dysfunction. However, the lewdness statute does not require penile penetration. (Footnote 4: See NRS 201.230). Moreover, Richmond was not charged with having penetrated A.A. with his penis. Thus, he fails to establish how the lack of additional cross-examination or a review of his medical records prejudiced him. Accordingly, we conclude Richmond's claim is without merit.

(Exhibit 73, at p. 2). The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court will deny habeas relief as to Ground 3(e).

**IV.     Certificate of Appealability**

In order to proceed with his appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529

U.S. at 484).  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further.  *Id.*

        This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard.  The Court will therefore deny petitioner a certificate of appealability.

**V.     Conclusion**

        **IT IS THEREFORE ORDERED** that the remaining grounds in the amended petition, Grounds 3(a), 3(c), 3(d), and 3(e), are **DENIED.**

        **IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT ACCORDINGLY.**

        **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

        DATED this 30th day of July, 2009.

*Edward C. Reed*
UNITED STATES DISTRICT JUDGE